**Brenda K. DAVIS, Plaintiff,**

v.

**THERM–O–DISC, INC., Defendant.**

No. 5:91 CV 1602.

United States District Court,
N.D. Ohio, E.D.

April 23, 1992.

---

**10.** Nor did any party brief the issue.

Raymond Michael Frank, W. David Arnold, Nathan & Roberts, Toledo, Ohio, for plaintiff.

Kathleen Keogh, David E. Bishop, Calfee, Halter & Griswold, Cleveland, Ohio, for defendant.

## ORDER

SAM H. BELL, District Judge.

Currently before the court is plaintiff's motion to amend her complaint. (Docket # 33) This discrimination case was commenced in 1991. Discovery was closed on the 28th of February, 1992. The defendants have moved for summary judgment, filing their final brief approximately one month ago in March 1992. Trial is scheduled to commence on the 5th of May, 1992. Plaintiff's proposed amendment would abandon her count alleging a conspiracy to violate her civil rights in violation of 42 U.S.C. § 1985, and substitute a claim under 42 U.S.C. § 1981; she adds a request for a jury trial as well as for compensatory and punitive damages under Title VII. Both parties have briefed the propriety of this motion.

Federal Rule of Civil Procedure 15(a) provides, in the part pertinent to the instant motion, the following:

> [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be longer.

Fed.R.Civ.P. 15(a). Inexplicably, the parties have not, as is customary, addressed the propriety of permitting an amendment at this late date. Rather, they have engaged in extensive debate over the substantive merits of plaintiff's proposed amendments. *See* 6 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1487 at 635 (1990) ("[T]he substantive merits of a claim or defense should not be considered on a motion to amend."). The court shall attempt to correct this oversight. *Moore v. City of Paducah,* 790 F.2d 557, 559 (6th Cir.1986) ("Abuse of discretion occurs when a district court ... fails to consider the competing interest of the parties and likelihood of prejudice to the opponent.")

██ The decision whether or not to permit amendment of plaintiff's complaint is relegated to the discretion of the trial court. *Gen'l Electric Co. v. Sargent & Lundy,* 916 F.2d 1119, 1130 (6th Cir.1990), *reh'g denied en banc* 1990 WL 161327, 1990 U.S.App. LEXIS 22103 (1990), *aff'd without opinion* 954 F.2d 724 (1992). However, this discretion is "limited by Fed. R.Civ.P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits." *Id. (quoting Marks v. Shell Oil Co.,* 830 F.2d 68, 69 (6th Cir.1987) (citations omitted). In making this decision, this court is permitted to consider several factors, among them are undue delay, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Id.; see also Hageman v. Signal L.P. Gas, Inc.,* 486 F.2d 479, 484 (6th Cir.1973). It is clear, however, that undue delay alone does not provide sufficient grounds to deny an amendment to pleadings. *Moore v. City of Paducah,* 790 F.2d 557 (6th Cir.1986).

The instant motion unquestionably exhibits both undue delay and undue prejudice; it was filed on the 1st of April, 1992, and is based entirely on plaintiff's desired application of the Civil Rights Act of 1991 which was signed into law in November of 1991. After the Act became operative, the parties herein have engaged in substantial discovery. This discovery culminated in a hotly contested and voluminously briefed motion for summary judgment filed by the defendant *in advance of* the instant motion to amend. The defendant, and this court, contemplated summary judgment in light of the case advanced by plaintiff in her original complaint. Discovery in this case, which, in the eyes of most reasonable persons is a matter far from negligible in terms of cost and time, was conducted with a view toward the case as originally advanced and vigorously pursued by plaintiff during a vast portion of this suit's lifespan. Now, with trial scheduled to begin in nearly two weeks, plaintiff requests this court to change not only the rules, but also the game.

At bottom, an undue prejudice inquiry asks if the party opposing the motion to amend "would have done anything differently" had the claim been presented in earlier pleadings. *Gen'l Electric Co. v. Sargent & Lundy,* 916 F.2d 1119, 1130 (6th Cir.1990). The answer to this question must surely be in the affirmative. The substantial change in plaintiff's case envisioned by plaintiff's proposed amendments changes the parties' itinerary, undoubtedly prejudices the defendant, and would effectively permit plaintiff to reschedule the prosecution of this case both on terms more to her liking and for reasons which could have and should have been raised last year. *See Troxel Mfg. Co. v. Schwinn Bicycle Co.,* 489 F.2d 968, 971 (6th Cir. 1973), *cert. denied,* 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974) ("[T]o put [defendant] through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial."). This discussion strongly suggests that the motion to amend should be denied.

██ Another view of the motion indicates that its denial not only prevents prejudice to the defendant but also results in no prejudice to plaintiff. It is clear that her motion for amendment seeks a retroactive application of the 1991 Act. (*See, e.g.,* Plaintiff Memorandum in Support of Motion at 1) ("The [1991] Act, however, amends § 1981 to permit a claim under that statute related to terms and conditions of employment. Accordingly, plaintiff now seeks to amend her complaint to add such a claim.") The court believes that, were the amendment granted, the argument for retroactivity would fail. It is well settled that "if the proposed change ... advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1487 at 637 (1991); *See, e.g., Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Banque de Depots v. Nat'l*

*Bank of Detroit,* 491 F.2d 753 (6th Cir. 1974); *Posadas de Mexico, S.A. de C.V. v. Dukes,* 757 F.Supp. 297, 302 (S.D.N.Y.1991) ("[B]ecause there is no colorable merit to defendant Rufer's proposed affirmative defense under section 1312, amendment of the answer ... would constitute a futile endeavor and is therefore denied.:...").

Contrary to plaintiff's views, this court does not believe the Sixth Circuit's opinion in *Vogel v. City of Cincinnati* is mere dicta. 959 F.2d 594 (6th Cir.1992). *Vogel,* involving a consent decree challenge, provided the Sixth Circuit with the opportunity to be the first federal appellate court to rule on the retroactivity of the Civil Rights Act of 1991. This court believes that the Circuit's ruling on this issue, clearly necessary for that opinion, was intended to be applicable to all provisions of the Act except those which may specifically provide for retroactive application. *See Vogel* at 597 ("The *Act* on its face, does not make clear whether it should be applied retroactively or prospectively.... District Courts construing the *Act* have split on the issue of whether *it* should be applied retroactively or prospectively.... In light of the ambiguity of the *statute* on its face and the lack of congressional guidance, the EEOC's decision to apply the 1991 Act prospectively appears reasonable.... Clearly, retroactive application of the *1991 Act* would affect 'substantive rights and liabilities' of the parties to this action. We hold that the *1991 Act does not apply retroactively to Vogel's claim for damages ....*"). This court must surmise that the Civil Rights Act of 1991 is not retroactive in this Circuit.

Even were the Circuit's opinion not so broad as this court presumes, the reasoning applied by the Sixth Circuit is applicable to the substantive provisions of the Act. A good example of this is the jury trial rights afforded Title VII plaintiffs under the 1991 Act. A brief analysis of this provision follows.

The Circuits almost unanimously denied the right to a jury trial in Title VII cases prior to the Civil Rights Act of 1991:

The Act [Title VII] provides for injunctive relief, specifically including backpay relief. The majority of federal courts have held that the Act does not allow a court to award general or punitive damages. The Act expressly allows the prevailing party to recover his attorney's fees, and, in some cases, provides that a district court may appoint counsel for plaintiff. Because the Act expressly authorizes only equitable remedies, the courts have consistently held that neither party has a right to a jury trial.

*Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 374-5, 99 S.Ct. 2345, 2350, 60 L.Ed.2d 957 (1975). The 1991 Act, however, specifically provides for jury trials in Title VII actions. At issue is whether this provision retroactively applies to cases that were pending while the 1991 Civil Rights Act was passed and enacted into law. Even with the assistance of the *Vogel* decision, the law on this issue is, to say the least, somewhat muddied.

The 1991 Act revised the statute by inserting after section 1977 (42 U.S.C.1981) the following new section which provides in pertinent part:

§ 1977A

(c) Jury Trial.—If a complaining party seeks compensatory or punitive damages (also provided for) under this section—

(1) any party may demand a trial by jury; and

(2) the court shall not inform the jury of the [damages] limitations described in subsection (b)(3).

(d) Definitions.—As used in this section:

(1) Complaining party—The term 'complaining party' means—

(A) in the case of a person seeking to bring an action under subsection (a)(1), the Equal Employment Opportunity Commission, the Attorney General, or a person who may bring an action or proceeding under Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.)

Section 402 of the 1991 Act (105 Stat. 1071) provides that "Except as otherwise specifically provided, this Act and amendments made by this Act shall take effect upon enactment."

The Supreme Court, unfortunately, has developed two apparently irreconcilable lines of authority on the retroactivity of legislative enactments. The first line of authority began with *United States v. Schooner Peggy*, 1 Cranch 103, 110, 2 L.Ed. 49 (1801), in which the Court held that courts should apply the law in effect at the time it renders a decision. The Court's other opinions, however, diverged from this philosophy:

> The presumption is very strong that a statute was not meant to act retrospectively, and it ought never to receive such a construction if it is susceptible to any other.

*U.S.F. & G. v. United States*, 209 U.S. 306, 314, 28 S.Ct. 537, 539, 52 L.Ed. 804 (1908). This confusion is most recently illustrated in two cases, *Bradley v. Richmond School Bd.*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1975) and *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). In *Bradley*, the court "anchored [their] holding in this case on the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." 416 U.S. at 711, 94 S.Ct. at 2016. In contrast, *Bowen* held that "[c]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." 488 U.S. at 208, 109 S.Ct. at 471.

The Supreme Court has subsequently conceded that these two lines of authority are in "apparent tension". *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990) In fact, Justice Scalia regards these lines of cases as an "irreconcilable contradiction." *Id.* at 841, 110 S.Ct. at 1579. The *Kaiser* Court, however, did not resolve the controversy because "under either view, where Congressional intent is clear, it governs." *Id.* at 837, 110 S.Ct. at 1577.

In the instant case, plaintiff argues that the intent of Congress on this matter is clear. In so doing, she notes that the stat-ute is to take "effect upon enactment", and that Congress specifically provided for exceptions to retroactivity in a number of places. The most noted exception to plaintiff's construction that the statute generally requires retroactivity is in § 402, the "effective date" portion of the '91 Act:

> (b) Certain Disparate Impact Cases— Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983.

Thus, plaintiff theorizes that exceptions so well defined imply that the Act's provision that it shall "take effect upon enactment" clearly contemplates retroactive application of its provisions. This argument, of course, holds some appeal. Nevertheless, one must question whether the language mandating "effect upon enactment" contemplates application of the new Act to pending cases filed before enactment. Many courts have agreed with this supposition. *See, e.g., Khandelwal v. Compuadd Corp.*, 780 F.Supp. 1077 (E.D.Va.1992) ("It is obvious that no provision of the new Act conveys a clear indication that Congress intended the Act to apply retroactively"). One court has asserted that the Act may as easily be read as intending prospective application. *Van Meter v. Barr*, 778 F.Supp. 83 (D.D.C.1991) The *Van Meter* court opined that each provision of the Act should be separately studied for an expression of congressional intent. Applying such an analysis, the court noted that a jury trial may only be demanded by a complaining party. A "complaining party" is defined as follows:

> the Equal Opportunity Employment Commission, the Attorney General, or *a person who may bring an action or proceeding under title VII*

*Id.* at 85. Thus, the *Van Meter* court concluded that "[b]y its terms, the statute seems to contemplate that only plaintiffs who have not yet brought their actions are entitled to invoke the new Act." *Id.*

Not surprisingly, the legislative history of the 1991 Act provides no clear evidence

of congressional intent. After the bill passed the Senate, the Senate reconvened to consider the Murkowski Amendment. This Amendment created the current section 402(b), specifically exempting the *Wards Cove* cases from being relitigated:

> (b) Certain Disparate Impact Cases.—Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983.

Senator Murkowski, without directly commenting on the retroactivity issue provided the following rationale for this amendment:

> If the court finds Congress has actually changed the legal standards, it is fundamentally unfair to judge 1971 employment practices by standards first created in 1991 ... Wards Cove would like to decline the honor of being the first case to litigate whether Congress has changed the law.

137 Cong.Rec. S15963 (daily ed. 5 November 1991). Additionally, the legislative history on the retroactivity of the Act is mixed. Senator Danforth, one of the co-sponsors of the 1991 Act contended the Act should not be applied retroactively:

> My review of Supreme Court case law supports my reading that in the absence of an explicit provision to the contrary, no new legislation is applied retroactively. Rather, new statutes are to be given prospective application only, unless Congress explicitly directs otherwise, which we have not done in this instance. Support for this proposition is derived from Justice Scalia's concurring opinion in *Kaiser Aluminum Corp. v. Bonjorno*, ... and the unanimous opinion of the Supreme Court in *Bowen v. Georgetown Univ. Hospital* ... and the numerous cases cited by Justice Kennedy in *Bowen*.
>
> I acknowledge that there appear to be two cases that do not adhere to this principle but instead support retroactive application of new statutes in the absence of manifest injustice.... The sponsors disapprove of these cases.

> Our intention in drafting the effective date provision was to adhere to the principle followed by the vast majority of Supreme Court cases and exemplified by *Bowen* and Justice Scalia's concurrence in *Bonjorno*.
>
> Subsection 22(b) [402(b)], regarding disparate impact cases, is intended only to provide additional assurance that the provisions of the bill will not be applied to certain cases that fit the provisions of that subsection. It should not be read in derogation of the sponsors' intention not to provide for retroactive effect or application as expressed in subsection 22(a) [402(a)].

137 Cong.Rec. S15483 (daily ed. 30 October 1991). Senator Kennedy's statements on this matter are to the contrary:

> I would like to state, however, my understanding with regard to the bill's effective date. Section 22 [402] of the bill states that "except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." Section 22(b) [401(b)] provided that nothing in the act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983.
>
> It will be up to the courts to determine the extent to which the bill will apply to cases and claims that are pending on the date of enactment. Ordinarily, courts in such cases apply newly enacted procedures and remedies to pending cases. That was the Supreme Court's holding in *Bradley v. Richmond School Bd.*

> .    .    .    .    .

> Many of the provisions of the Civil Rights Act of 1991 are intended to correct erroneous Supreme Court decisions and to restore the law to where it was prior to those decisions. In my view, these restorations apply to pending cases, which is why the supporters of the Murkowski amendment sought language to prevent the restorations from applying to that particular case. In fact, the adoption of the Murkowski amendment makes

it more likely that the restoration in the act will apply to all cases except the *Wards Cove* case itself. Ironically, the defeat of the Murkowski amendment would make it more likely the courts would not apply the restorations to any pending cases, including the *Wards Cove* case.

137 Cong.Rec. S15485 (daily ed. 30 October 1991); 137 Cong.Rec. S15963 (daily ed. 5 November 1991). With the legislative history in contradiction, some courts have turned to the regulations formulated by the agency responsible for administering the law.

The Supreme Court has stated that courts should analyze an administrative agency's construction of legislation in the following manner:

> When a court reviews an agency's construction of the statute it administers, it is confronted with two questions. First, always, is the question whether Congress had directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If however, the court determined Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.... Considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer....

*Chevron USA v. Natural Res. Def. Council*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). The EEOC has not yet drafted a regulation on this matter although it has issued a policy statement on retroactivity. EEOC Notice No. 915.002 (December 27, 1991) In this notice, the Commission noted that plaintiff's construction of the statute was not without foundation. Nevertheless, the Commission reasoned that the Supreme Court's *Bowen v. Georgetown* decision was most recent and likely to control future interpretation of legislative enactments. Therefore, the Commission concluded that it would "follow the dictates of [*Bowen*] with regard to the retroactivity of the damages provisions. Accordingly, the Commission will not seek damages in charges filed prior to the enactment of the Act, or in post Act charges that challenge pre Act conduct." *Id.* at 7 Although this statement is not in regulatory form, it is arguable that the EEOC's announcement should be afforded deference. *Tyree v. Riley*, 783 F.Supp. 877, 889 (D.N.J.1992) (so holding). Although deference to the EEOC position does not definitively resolve this issue, the Sixth Circuit's interpretation of the divergent Supreme Court precedent, even apart from its decision in *Vogel*, may be read to support the Commission's viewpoint.

In *United States v. Murphy*, 937 F.2d 1032 (6th Cir.1991) the Circuit reviewed the grant of summary judgment in favor of plaintiff in a civil action brought under the False Claims Act. On appeal, the defendant argued that the district court improperly applied the 1986 amendments to the False Claims Act retroactively. The '86 amendments provided a definition of "knowingly" to include conduct which the Sixth Circuit would not have previously viewed as illegal and also provided for increased damages. The Sixth Circuit reversed.

In its opinion, the Circuit acknowledged tension spoken of above between the Supreme Court's *Bradley* and *Bowen* case law. The Circuit reasoned that "because there is not clear language or legislative history forbidding retroactive application, [and] there is not clear language or legislative history requiring it, ... we must choose between the broad statement of the law in *Bradley* and the recent affirmation in *Bowen* of the general rule against retroactive application." *Id.* at 1037. The Circuit reconciled the divergent case law in the following manner:

More recent decisions, however, make clear that *Bradley* represents a relatively narrow exception the general 'principle that statutes operate only prospectively,' a notion 'familiar to every law student.' These post-*Bradley* cases have reaffirmed the 'venerable rule ... that statutes affecting substantive rights and liabilities are presumed to have only prospective effect.' *Id.* at 1037. Thus, the court concluded that "the recent Supreme Court cases convince us not only that *Bradley* is to be read narrowly, but also that the phrase 'substantive rights and liabilities' is to be construed broadly in this context." *Id.* at 1038. In an apparent use of this broad construction, the Circuit held:

> [T]he amendments in this case were applied to increase the liability of an individual by more than $1,000,000. Thus, the amendments were used to "create a new liability in connection with a past transaction." Accordingly, we hold that it was error for the district court to apply the amendments retroactively.

*Id.* Thus we are confronted with the question of whether the 1991 Civil Rights Act's provisions for jury trials and compensatory damages affect substantive rights and liabilities when such rights and liabilities are given a broad, inclusive construction. The courts which have engaged in such an analysis have concluded that the 1991 Act does modify substantive rights and liabilities. *See Van Meter, supra,* at 84 ("[The] right to seek compensatory damages in a jury trial against the United States is a major substantive provision."); *Khandelwal v. Compuadd Corp.,* 780 F.Supp. 1077, 1080 (E.D.Va.1992) ("The retroactive application of the jury trial provision and the compensatory damages provision, however, effects both how liability is found and the amount of any liability.... [A] right to seek compensatory damages in a jury trial is a major substantive provision. With these new sanctions necessarily comes the requirement that courts consider different and dispositive issues, such as whether the plaintiff has suffered injury entitling him to money damages....") In the instant context, these conclusions apparently con-

form to the Sixth Circuit's most recent analysis of the Supreme Court cases. In *U.S. v. Murphy,* the court specifically held that the imposition of greater liability affected substantive rights and liabilities and could not therefore be retroactively applied. 937 F.2d at 1038. The Civil Rights Act of 1991 not only provides for compensatory and punitive damages for Title VII claimants but specifically and logically confines the right to a jury trial to parties seeking such damages.

> (c) Jury Trial.—If a complaining party seeks compensatory or punitive damages under this section—
>
> > (1) any party may demand a trial by jury

§ 102. Since these damages affect substantive rights and liabilities, and cannot be retroactively applied, the jury trial right, conditioned on the availability of those damages, should likewise not be permitted.

Similar reasoning is clearly called for by the changes the Act envisions for suits brought under § 1981. It is clear the Act permits claims under that section which were previously barred. In fact, the Act specifically provides that it was enacted "to *provide additional protections against unlawful discrimination in employment*" by "respond[ing] to recent decisions of the Supreme Court by *expanding* the scope of *relevant civil rights statutes in order to provide adequate protection to victims of discrimination.*" Civil Rights Act of 1991, §§ 2(3), 3(4) (emphasis added). Such changes surely affect substantive rights and liabilities and therefore may not be retroactively applied. The Court of Appeals for the Eighth Circuit quite recently came to the same conclusion. *See Fray v. Omaha World Herald Co.,* 960 F.2d 1370 (8th Cir.1992) ("Therefore, whether we apply the traditional *Georgetown Hospital* principle of presumptive non-retroactivity, which we think is the better rule, or the conflicting *Bradley* test, we conclude that Section 101 of the Act, overruling *Patterson,* should not be retroactively applied to pending cases or other pre-enactment conduct."). All of the reasoning discussed persuade this court that even were the re-

quested amendment to the complaint granted, plaintiff still would be unable to apply the 1991 Act retroactively. This fact establishes that plaintiff would not be prejudiced by the denial of the motion inasmuch as the basic reason for the amendment is to utilize the imagined retroactivity.

Accordingly, the plaintiff's motion to amend her complaint is DENIED.

IT IS SO ORDERED.